*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *UNITED STATES OF AMERICA* ) | |
| ) | |
| *v.* ) | *Criminal No. 06-44-P-S* |
| ) | |
| *ERIC CONE,* ) | |
| ) | |
| *Defendant* ) | |

*RECOMMENDED DECISION ON MOTION TO SUPPRESS*

Eric Cone, charged with possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), Indictment (Docket No. 14), seeks to suppress the firearm and ammunition found in a safe seized from the bedroom of his residence on November 3, 2005. An evidentiary hearing was held before me on September 13, 2006 at which the defendant appeared with counsel and following which counsel argued orally. I now recommend that the following findings of fact be adopted and that the motion be denied.

**I. Proposed Findings of Fact**

On November 3, 2005 at approximately 5:00 p.m. Cheryl Cone came into the Androscoggin County Sheriff's offices to file a complaint. Sergeant James Jacques, who was on duty for a 12-hour shift beginning at 4:00 p.m. that day, met with her. Ms. Cone told Sgt. Jacques that she had been assaulted by her husband, the defendant, in their home at 38 Parker Way in Turner, Maine; that she had just dropped the defendant off at work at Federal Express; and that he would be driving to Connecticut that night and was expected to return around 7:30 the next morning. Ms. Cone said that the defendant had spit in her face, grabbed her by the neck, and threatened to kill her with a large silver handgun which he had taken from a safe in their bedroom and later returned to the safe. She said that the

defendant had also smashed the windshield of her car and broken lamps and the picture tube of a television set. In addition, she told Jacques that the defendant was on probation as a result of his conviction for a prior domestic assault of her and that the defendant's probation officer was John Pyska. Jacques took a photograph of bruises on Ms. Cone's neck.

Jacques called Pyska, who told him that as a result of Ms. Cone's complaint he would put a hold on the defendant, which meant that he wanted the defendant to be arrested for a probation violation as well as assault and threatening with a dangerous weapon. Jacques also learned that the defendant was not supposed to be in possession of a firearm; he believes that it was a standard provision of probation that the probationer could not have firearms.

Jacques followed Ms. Cone to the residence, where she showed him glass in the hallway from a broken lamp, blood which she said was the defendant's, a bottle of Jack Daniel's in the bedroom which the defendant and Ms. Cone shared, a television set with a broken tube and a safe in the same bedroom. Ms. Cone went to the residence to remove some personal items, as she did not intend to remain there. She told Jacques that only the defendant had the combination to the safe and that it was locked. Jacques verified that the safe was locked. Government Exhibit 1 is a photograph of the safe as it appeared that day. Jacques took the bottle of Jack Daniel's from which Ms. Cone said the defendant had been drinking, a knife and the safe and put them in his patrol vehicle. Ms. Cone was cooperative and Jacques understood her to be giving him permission to take these items. She never objected to his taking any of these items.

Jacques transported the safe to the sheriff's office, where he logged it into evidence. His plan was to apply for a search warrant to get access to the gun which Ms. Cone had told him was in the safe. At that time he knew that the defendant had not yet been apprehended. The defendant was arrested when he returned at approximately 7:30 a.m. on November 4, 2005 to the Federal Express

location where Ms. Cone had left him on November 3. When Jacques came in to work at 4:00 p.m. on November 4, he began to draft the search warrant application with the assistance of Detective Sergeant Gagne, who usually prepared search warrant applications for the sheriff's office. Gagne and the only other detective with experience in drafting search warrant applications both work the day shift, which ends at 5:00 p.m. Jacques learned at this time that the defendant had been apprehended and was in the Androscoggin County jail. The application was submitted to a complaint justice on November 5, 2005, and the search warrant was issued.

The search warrant was executed immediately after it was issued on the morning of November 5, 2005. Jacques brought the search warrant to the sheriff's office where the safe was stored. The defendant was brought to the office from the jail and served with the search warrant; he agreed to open the safe and did so. The gun at issue was found inside the safe along with other items belonging to the defendant.

Jacques was not familiar with Ms. Cone or the defendant before his involvement in this complaint. At the time he seized the safe, he had no reason to believe that the defendant would return to the residence before the next morning, when he was expected.

## II. Discussion

The defendant contends that the seizure of his safe was "per se unreasonable" because the government cannot establish an exception to the requirement that a search warrant be obtained before a seizure of property. Motion to Suppress Unlawful Seizure of Firearm and Ammunition, etc. (Docket No. 19) at [2]. More specifically, he asserts that "[s]ince [the] 90-minute detention period [held in *United States v. Place*, 462 U.S. 696, 710 (1983), to render a search unreasonable] was well exceeded by the time frame presented by the case at bar, some other factors or warrant exceptions need to be present to justify the seizure," Reply to Government's Response Regarding Motion to

Suppress (Docket No. 23) at [2]; that case law concerning warrantless entries into homes is not relevant to his motion, *id*.; and that "[t]here is no conceivable way for [Jacques] to 'reasonably understand' that dominion over a safe is shared by one who does not have the combination to such," *id*. Finally, in oral argument at the close of the evidentiary hearing, counsel for the defendant contended that there was no exigency justifying the seizure of the safe without first obtaining a search warrant because Jacques knew that the defendant was out of state and would not be returning until the next morning, when he would be arrested; that there was no reason to believe Ms. Cone's story; that the fact that Ms. Cone did not have the combination to the safe demonstrated decisively that she could not consent to its seizure; and that the Fourth Amendment required Jacques to seek a search warrant immediately after seizing the safe, so that the approximately 38 hours that passed between the seizure and the application for the search warrant constituted a constitutional violation.

Here, the defendant does not contend, nor could he, that Ms. Cone could not give consent to Jacques' entry into the residence. It is only the seizure of the safe after that entry that is challenged. The Supreme Court said in *Place* that

> [w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it . . . .

462 U.S. at 701. The defendant's attempt to distinguish this very relevant opinion fails. It is not the fact that a 90-minute seizure of the defendant's luggage at an airport was held to be unreasonable under the circumstances of that case[1] that matters when the general holding of the case is applied here; it is

---

[1] The Supreme Court noted that the agents who seized the defendant's luggage "knew the time of [the defendant's] scheduled arrival at La Guardia, had ample time to arrange for their additional investigation at that location, and thereby could have minimized the intrusion on respondent's Fourth Amendment interests." 462 U.S. at 709. Here, the defendant was not deprived of luggage with which he was traveling, or of personal effects with which he could travel, and he was miles away from the safe when it was seized. By the time the search warrant was issued, the defendant was in jail and could not have used the safe or its contents in any event.

the Supreme Court's instruction that the exigencies of the circumstances present in each case must be evaluated separately that is of importance in the case at bar.

I apply *Place* to the circumstances of this case by beginning with the question of probable cause. There is no question that Jacques had probable cause to believe that the safe held evidence of a crime, specifically the gun that Ms. Cone told him had been used by the defendant, who had previously been convicted of domestic violence against Ms. Cone, to threaten her life. The fact that Jacques had no particular reason to believe or disbelieve Ms. Cone does not deprive the information she provided of its ability to sustain probable cause. *See Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004) (uncorroborated testimony of victim, standing alone, ordinarily can support finding of probable cause). In addition, any "intrusion on [the defendant's] Fourth Amendment interests," *Place,* 462 U.S. at 709, was minimized in this case because there was never a time between the seizure of the safe and the issuance of the search warrant when the defendant could have had access to the contents of the safe if it had not been seized. At oral argument, counsel for the defendant suggested that placing a guard at the defendant's house until the search warrant was obtained so that no one could remove the safe in the interim would have been constitutionally permissible. This view exalts form over substance; there is nothing significantly different from that practice in what was actually done here, where access to the safe was similarly and more practically denied to all.

At the time he seized the safe, Jacques could not know with certainty before securing a search warrant whether the defendant would attempt to return to the house before he was expected to the next morning or whether his arrest could be effected before his attempted return to the house at whatever time. Jacques did know that Ms. Cone had been injured, that the house showed damage consistent with domestic violence, that the defendant had previously been convicted of domestic violence against Ms. Cone, that the defendant was on probation as a result of that conviction and was not allowed to

5

possess firearms and that Ms. Cone had told him that the defendant had threatened her with a firearm that was presently inside the safe. These circumstances created a sufficient exigency to allow Jacques to seize the safe, a minimal intrusion under the circumstances, and to hold it until a search warrant for its contents could be obtained. I agree with the defendant that the delay in obtaining the search warrant in this case was excessive; any law enforcement agency must be expected to organize itself and its personnel so that applications for search warrants may be made considerably more promptly than occurred in this case. That delay, however, contrary to the defendant's argument, does not require granting of the motion to suppress. Defense counsel cited no authority in support of this position and my research has located only one case addressing the issue. *See generally United States v. Aldaz*, 921 F.2d 227, 230-31(9th Cir. 1990) (reasonableness of postal service's 3-day seizure of packages before search warrant obtained depends on reasons for delay). Under the circumstances of this case, the delay, while unnecessary, was not so unreasonable as to require suppression.

This analysis makes it unnecessary to address the question whether Ms. Cone could consent to the seizure of the safe under the circumstances.

### III. Conclusion

For the foregoing reasons, I recommend that the proposed findings of fact be adopted and that the defendant's motion to suppress be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of September, 2006.

                                              /s/ David M. Cohen
                                              David M. Cohen
                                              United States Magistrate Judge